CAMDEN FIRE INS. ASS'N v. BOMAR.
(No. 7341.)

(Court of Civil Appeals of Texas. Dallas.
April 17, 1915. Rehearing Denied
May 15, 1915.)

1. INSURANCE ⊝⇒328—FORFEITURE—CHANGE
IN TITLE OR POSSESSION.

D., holding an insurance policy on a building payable to the holder of a vendor's lien, negotiated an exchange of property with real estate agents, who represented to him that H. was the purchaser, and had the deed made to H. D. told the insurance agent of the sale, transferred the policy to H., with the agent's consent. H. had not agreed to buy the property, the agents having acted upon the assumption that they would be able to negotiate a sale to him. *Held*, that if the deed did not pass title to H., it remained in D. and there was no change in the title, possession, or interest within a provision of the policy, while if the deed did pass the title to H. such change in title was expressly consented to and the policy was not invalidated.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 794–822, 825; Dec. Dig. ⊝⇒ 328.]

2. INSURANCE ⊝⇒282—FORFEITURE—MISREPRESENTATION OR CONCEALMENT OF MATERIAL FACT.

D.'s statement to the insurance agent that he had sold the property to H. was not such a concealment or misrepresentation of a material matter as invalidated the policy, there having been no misrepresentation or concealment, but only a statement concerning a matter relative to which D. had been misinformed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 601–635; Dec. Dig. ⊝⇒282.]

3. INSURANCE ⊝⇒598—ACTIONS ON POLICIES —INTEREST—"LIQUIDATED DEMAND."

Under Rev. St. 1911, art. 4874, providing that a fire insurance policy, in case of a total loss by fire of the property insured, shall be a "liquidated demand" against the company for the full amount of the policy, provided that this shall not apply to personal property, upon the total destruction of an insured building by fire, neither notice nor proof of loss was necessary, the claim being due upon demand, a provision in the policy that the loss should not become payable until 60 days after notice and satisfactory proof of the loss became inoperative and without force, and, payment of the loss having been refused, interest was recoverable from the date of the fire.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1494; Dec. Dig. ⊝⇒598.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by L. H. Bomar against the Camden Fire Insurance Association and others. From a judgment for plaintiff, the defendant named appeals. Affirmed.

W. W. Hilbrant, of Dallas, for appellant. Cecil L. Simpson, of Dallas, for appellee.

RASBURY, J. Appellee sued appellant upon a fire insurance policy in the sum of $700. E. W. Daniels, J. W. Heffington, and W. W. Haggard were made parties defendant to the suit. At the conclusion of the testimony the court discharged Heffington upon his disclaimer of any interest in the policy, and instructed the jury to find that Daniels and Haggard, neither of whom appeared in the case but wholly defaulted, had no interest in the policy, and to return verdict against appellant for the amount of the policy, which was done, and upon which similar judgment was entered, and from which this appeal is perfected. We will not state the pleadings in detail, since they properly raise the issues presented in the brief.

The following are the essential and practically undisputed facts developed on trial: On May 21, 1912, appellant issued a fire insurance policy to J. E. Redd for a term of three years from said date, in consideration of the payment by said Redd of the premium demanded, insuring the one-story frame building belonging to him, situated on lot 3, block C, Carl's Court addition to Ft. Worth, Tex., against all direct loss or damage by fire, except as provided in the policy, in an amount not exceeding $700, any loss or damage arising under the policy payable to appellee, L. H. Bomar, as his interest might appear. Subsequent to the issuance of the policy Redd sold and conveyed the insured property to E. W. Daniels, to whom Redd, with the consent and approval of appellant, transferred his interest in the policy. Thereafter, and on March 29, 1913, Daniels by written indorsement on the policy transferred his right and interest in the policy to one J. W. Heffington, and to which transfer appellant consented by written indorsement on the policy, reciting the consent to be based upon the fact that Heffington had purchased the insured property. On April 30, 1913, the insured property was totally destroyed by fire. When appellee sold and conveyed the insured property to Redd he retained in the deed the vendor's lien against the same to secure the payment of a note for $890, a part of the purchase price. This note was assumed by Daniels when he bought, and was unpaid at the time the property was destroyed. This indebtedness was the interest of appellee referred to in the policy. At the time of the fire the deed records of Tarrant county disclosed that Daniels held the title to the property. It appears, however, from the record of this appeal, that before the property was destroyed by fire Daniels had authorized J. E. Wagner & Co., real estate agents, to sell or exchange same, and that these agents had shown Daniels a place represented by the agents to belong to one S. W. Shaver, which he agreed to take in exchange for his. When Daniels went to the office of the agents to consummate the exchange, he was requested to deed his property to J. W. Heffington. Upon inquiring of the agents why the deed was to be made to Heffington they explained that they had been doing some trading and in order to avoid writing deeds and to save recording fees the deed was made to Heffington, the "last purchaser." Daniels was sat-

isfied, and executed the deed, and the agents delivered to him a deed from Shaver to his property. Under the deed so delivered Daniels took possession of the Shaver property. Daniels informed appellant's agent that he had sold to Heffington, and at the suggestion of the agent Daniels transferred the policy to Heffington, the agent consenting thereto, in writing. Heffington was not present when Daniels informed the appellant's agent that he had bought the property, and knew nothing of it. The agent in making the transfer was acting in good faith, and for the purpose of protecting the interest of the parties. As a matter of fact Heffington never agreed to buy the Daniels lot, never authorized the deed to be made to him, never accepted same, and did not authorize the transfer upon the policy of insurance. The real estate agent's version of the transaction is that he made the trade with Daniels and Shaver, but that before it could be consummated Shaver receded (though Shaver testified that he never at any time agreed to purchase the Daniels lot, in fact refused to do so), and thereupon W. W. Haggard, connected with Wagner & Co., or at least in the real estate business, agreed to take the Daniels lot, but directed the deed to be made to Heffington, to whom he thought he could sell it. Thus matters stood when the fire occurred. After the fire Haggard requested Heffington to claim title to the property in order that the insurance might be collected. Heffington declined to do so, on the ground that the property was not and never had been his. Haggard was a party to the suit, and not only defaulted in that respect, but did not testify at trial, leaving Heffington's testimony without contradiction. Appellee requested payment of the policy, which was refused by appellant's agent.

As material to the issues on this appeal the policy contained the following provisions:

"That this entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof; or if the interest of the insured be not truly stated herein; * * * or if the interest of the insured be other than the sole and unconditional ownership; or if the subject of insurance be a building on ground not owned in fee simple by the insured; * * * or if any change other than by death of the insured, take place in the interest, title or possession of the subject of insurance"

—unless otherwise provided by agreement indorsed on or added to the policy. The policy also provided:

"And the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company," etc.

[1, 2] It is first urged that the court erred in peremptorily directing verdict for appellee, Bomar, because the evidence shows that the title to the property was not in Daniels, the insured, at the time of the fire, and hence in violation of that provision of the policy which forfeits same in case of any change in the interest, title, or possession of the subject of insurance, unless agreed to by the company. And in another assignment of error, it is urged that the court erred in directing the verdict it did because the title was in Heffington, and for that reason was in violation of the quoted provision of the policy. We are unable to see how it will affect appellant's liability to appellee on the policy in either event. The title was vested in either Heffington or Daniels. That fact is beyond controversy. In whichever it was, the amount of the loss by the terms of the policy was to be paid to appellee, since the appellee's debt was in excess of the insurance. If the deed made under the circumstances which we have detailed in fact passed the title to Heffington, there is obviously no error in the court's action, for the reason that by indorsement written upon the policy it consented to and approved the transfer to Heffington, the clause making the loss payable to appellee according to his interest never having been changed. If the deed to Heffington was made upon the assumption by Haggard that he would be able to negotiate a sale thereof to Heffington, but in which he failed, and we incline to the opinion that the evidence supports that conclusion, then the title surely would be in Daniels, and if in Daniels, appellant would yet be liable because there was no such change in title, possession, or interest of the property as contemplated by the policy. The indorsement made upon the policy by appellant's agent, even though in good faith, could not produce a change in title, if in fact the title did not pass. That it did not pass is quite clear from the uncontroverted testimony of Heffington, who makes it clear and certain that he never agreed to buy the property or to accept the deed. Nor is the statement made by Daniels that he had sold the property to Heffington such concealment or misrepresentation of a material matter as contemplated by the policy, since the information imparted was a fact concerning which Daniels had been misinformed rather than a misrepresentation or a concealment thereof. He neither concealed nor misrepresented any fact known by him relating to the title to the insured property.

[3] It is also urged that the court erred in directing the jury to find for appellee interest from April 30, 1913, the date the property was destroyed by fire, for the reason that it is provided by the policy that any sum due thereunder shall be payable 60 days after notice, estimate and satisfactory proof of loss having been furnished. In this connection the evidence shows that the insured premises were a total loss, which converted the policy into a valued one under article 4874, R. S. 1911, and that payment of the loss was refused. Under such concurring facts neither notice nor proof of loss is necessary; the claim being due upon demand.

Such being the facts, the provision allowing 60 days in which to pay the loss becomes inoperative and without force. Northern Assur. Co., Limited, of London et al. v. Morrison, 162 S. W. 411.

Finding no reversible error in the record, the judgment is affirmed.