# Supreme Court of Texas

---

No. 24-0135

---

Kevin Burke, Jeffrey Schwartz Burke, Tracy Ruth Burke, Lucky Burke, Cindy Bernat, Pam Burke Daily, Barbara Burke Harberg, Lori Ilene Quinta Valle, Fonda Glazer, and Kim Brown,

*Petitioners*,

v.

Houston PT BAC Office Limited Partnership (Bank of America),

*Respondent*

---

On Petition for Review from the
Court of Appeals for the First District of Texas

---

**PER CURIAM**

Justice Devine did not participate in the decision.

In this challenge to a real estate appraisal determination, we apply impartiality principles from arbitration law at the parties' behest. The lease agreement at issue provides a dispute resolution process that governs when the parties cannot reach agreement about rent adjustments based on the fair market value of the property. As part of that process, each side must select an appraiser. If the appraisers

cannot agree on the value of the property, the parties must select a third "neutral" appraiser.

When a dispute as to fair market value arose, one side consented to a neutral appraiser not knowing that the other side had spoken to him about the case and declined his services as a party appraiser, representing to him that he would be "at the top of our list" to serve as the neutral. The court of appeals characterized this communication as "non-substantive" and affirmed the trial court's confirmation of the appraisal decision. We hold that communications about the case with a potential neutral regarding hiring that neutral as a party-designated appraiser in the matter in dispute must be disclosed to the other party. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

**I**

In 1972, the parties' predecessors signed a long-term lease for a downtown Houston property housing the Bank of America Building. The lease provides periodic adjustments to rent based on the fair market value of the property "as if free and clear of all improvements, encumbrances, and leases." If the parties do not agree on the value, the lease provides for an appraisal process. Under this process, each party chooses an appraiser. If the two appraisers do not agree on a valuation, then the appraisers must select a third "competent and impartial person."

During the first adjustment period, the parties did not agree on a valuation, primarily driven by a difference in opinion as to whether connectivity with the Houston tunnel system on adjacent land should be

2

considered as part of the valuation. Invoking the appraisal process, petitioner Landlords[1] selected Ronald Little as their appraiser.

Respondent Houston PT BAC Office Limited Partnership, the tenant, interviewed prospective appraiser Scott Rando about his "[q]ualifications, timeline, experience downtown, improved versus unimproved [properties], partial block versus full block [properties]," and "tunnel connected versus non-tunnel connected" properties. After the phone interview, Rando emailed BAC his contact information, stating:

> [W]hen you are ready to hire us, please include Jake (reply all to this email) in your email, along with appropriate contact information for the other side's expert (Ron Little) so that Jake can meet the 10 day clock and get a meeting set with them. We will craft an engagement letter when I return.

BAC responded to Rando that it intended to engage a different appraiser, Curtis Podlewski, to serve as its party appraiser because BAC was "a little concerned about" Rando's ability to meet the lease's "tight timelines." BAC's representative continued:

> That said, it would not surprise me at all if this process were to extend to a third appraiser and based both upon our internal discussions, as well as discussions with our initial appraiser, you will be at the top of our list for that third appraiser designation.

As predicted, Little and Podlewski did not agree on a valuation. Together, they chose Rando to be the neutral appraiser. Little valued

---

[1] The Landlords are Kevin Burke, Jeffrey Schwartz Burke, Tracy Ruth Burke, Lucky Burke, Cindy Bernat, Pam Burke Daily, Barbara Burke Harberg, Lori Ilene Quinta Valle, Fonda Glazer, and Kim Brown.

the land at $14.4 million, including in his valuation the value of connectivity to adjacent land that was also part of the tunnel system. Podlewski and Rando valued the property at $8.2 and $8.7 million, respectively, declining to include value attributable to connectivity to tunnels on adjacent land.

Disagreeing with the majority's valuation, the Landlords sued for a declaratory judgment that the lease requires the property to be valued "as if free and clear of all improvements, encumbrances, and leases" but does not require the appraisers to assume that adjacent land is free of improvements. Meanwhile, Podlewski and Rando settled on a valuation of $8.475 million. BAC counterclaimed to enforce the valuation.

During discovery, BAC revealed its communications with Rando about his potential engagement as its party appraiser. The Landlords then added claims for breach of contract and fraud, alleging that Rando should have disclosed his communications with BAC about this dispute ahead of his selection as the neutral appraiser. The Landlords' appraiser testified he would not have agreed to accept Rando as the neutral appraiser had he known the extent of the communications between BAC and Rando about the valuation dispute.

BAC moved for summary judgment on the Landlords' breach of contract and fraud claims. The trial court granted summary judgment and confirmed the appraisal valuation of $8.475 million.

The court of appeals accepted the parties' reliance on Chapter 171 of the Civil Practice and Remedies Code as governing the appraisal process set forth in the lease. *See* ___ S.W.3d ___, 2024 WL 187445, at *3-4 & n.4 (Tex. App.—Houston [1st Dist.] Jan. 18, 2024). The statute

4

requires courts to vacate arbitration awards prejudiced by the "evident partiality" of a neutral arbitrator. TEX. CIV. PRAC. & REM. CODE § 171.088(a)(2)(A). The evident-partiality standard is met if an arbitrator fails to disclose facts that "might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 525 (Tex. 2014). The court of appeals concluded that the communications between Rando and BAC were "non-substantive and [did] not rise to the level of material fact requiring disclosure." ___ S.W.3d ___, 2024 WL 187445, at *5 (citing *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017)).[2]

## II

A court has a statutory obligation to vacate an arbitration award if "the rights of a party were prejudiced by . . . evident partiality by an arbitrator appointed as a neutral arbitrator." TEX. CIV. PRAC. & REM. CODE § 171.088(a)(2)(A). Appraisals are not arbitrations, and an appraisal may be valid in circumstances in which an arbitration award must be vacated. *See In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002). Like arbitrators, however, appraisers have an obligation to be impartial. *Del. Underwriters v. Brock*, 211 S.W. 779, 780-81 (Tex. 1919). Thus, if an appraisal has been conducted with prejudice or bias, "neither party is precluded from going to the courts,

---

[2] The court of appeals further affirmed summary judgment on the Landlords' fraud claim. ___ S.W.3d ___, 2024 WL 187445, at *11. The Landlords do not appeal that portion of the judgment in this Court, confining their challenge to the appraisal valuation process.

5

notwithstanding the agreement to submit their differences to the board of appraisers." *Id.* (quoting *Hall v. W. Assurance Co.*, 32 So. 257, 258 (Ala. 1902)). Assuming without deciding that the parties are correct that impartiality standards governing arbitrators may apply to appraisers, we conclude that the court of appeals erred in holding that the undisclosed communications at issue are nonsubstantive.

"Evident partiality" is a basis for vacating arbitration awards under the Texas Arbitration Act, its federal counterpart, and the arbitration acts of many other states. *Burlington N. R.R. Co. v. TUCO, Inc.*, 960 S.W.2d 629, 632 (Tex. 1997). Though arbitrators are not disqualified by earlier business relationships with a party, "parties must have access to all information which might reasonably affect the arbitrator's partiality." *Id.* at 635. Thus, "a prospective neutral arbitrator selected by the parties or their representatives exhibits evident partiality if he or she does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Id.* at 636. The undisclosed information need not establish that an arbitrator was biased; rather, the nondisclosure itself serves as a basis for vacating the award. *Id.* The disclosure rule, however, does not require an arbitrator to reveal trivial or immaterial matters. *Forest Oil Corp.*, 518 S.W.3d at 431. The trial court is the arbiter of witness credibility, *see id.*, but whether the undisputed facts convey an impression of partiality is a question of law, *see TUCO*, 960 S.W.2d at 637 (holding that undisclosed relationship conveyed an impression of partiality).

In *TUCO*, the law firm partner of one of the party arbitrators participated in the referral of significant unrelated business to the neutral arbitrator while the arbitration was pending. *Id.* at 630-31. The neutral arbitrator did not disclose this new business relationship to the other party. *Id.* at 631. Our Court concluded that the referral "might have conveyed an impression of [the neutral arbitrator]'s partiality to a reasonable person." *Id.* at 637. Although the neutral arbitrator had previously disclosed earlier business contacts with the same law firm and the complaining party had not objected at the time, we noted that "a person might reasonably differentiate between a past relationship and one that arises shortly before or during the arbitration proceedings." *Id.* at 638. Our opinion stressed that no evidence of the neutral arbitrator's actual bias was present in that case. *Id.* at 639. Nonetheless, "the fact that a reasonable person could conclude that the referral *might* affect [the neutral arbitrator]'s impartiality triggers the duty of disclosure." *Id.*

As the Court's *TUCO* opinion observes, a material undisclosed relationship that arises during a pending matter may present the appearance of bias to an objective observer. In *TUCO*, the undisclosed relationship was unrelated to the matter referred to arbitration. The undisputed facts in this case show that the undisclosed communications directly related to the matter submitted to the appraisal process and preceded Rando's appointment as the neutral appraiser. Those communications convey that BAC and Rando had discussed the pending matter, and based on those discussions, BAC promised Rando that it would place him at "the top of our list" for appointment as the neutral

7

appraiser. Such communications reasonably create an impression of partiality to an objective observer, as the discussions were not confined merely to Rando's availability and timing. Substantive communications between the party and a potential neutral regarding the very matter under consideration are material. Rando should have disclosed this communication in connection with accepting the appointment as the neutral appraiser.[3] *See id.* at 637-39.

BAC responds that its communications with Rando amount to nothing more than ordinary scheduling discussions. The record belies this contention. Though specific values were not discussed, the parties' discussions included topics such as Rando's experience with "improved versus unimproved [properties], partial block versus full block [properties]" and "tunnel connected versus non-tunnel connected" properties. Additionally, Rando's email to BAC accepting the role of party appraiser and casting the Landlords as "the other side" demonstrates that, in Rando's view, the discussions went beyond Rando's experience and availability.

BAC further requests that we narrow our Court's holding in *TUCO* as too stringent or overrule it to accord with federal case law interpreting the Federal Arbitration Act. We decline to disturb our

---

[3] The parties invoked the law of arbitration to decide this case. Given their agreement, we do not decide whether the appraisal context generally requires appraisers to meet the disclosure requirements governing arbitrators. The lease in this case refers to the Uniform Standards of Professional Appraisal Practice, which impose a duty to disclose "any current or prospective interest in the subject property or parties involved." THE APPRAISAL FOUND., 2024 UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE 9. This opinion does not interpret this standard.

arbitration precedent in a case that does not feature an arbitration agreement.

*　　*　　*

Without hearing oral argument, TEX. R. APP. P. 59.1, we grant the petition for review and reverse the trial court's order confirming the appraisal valuation. The remainder of the court of appeals' judgment, having not been challenged, remains in effect. We remand the case to the trial court for further proceedings consistent with this opinion.

**OPINION DELIVERED:** December 19, 2025